## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jul 06 2015, 10:40 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Mark Leeman
Leeman Law Offices
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ronald Lambert,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

July 6, 2015

Court of Appeals Case No. 25A03-1412-CR-462

Appeal from the Fulton Superior Court

The Honorable Wayne E. Steele, Judge

Case Nos. 25D01-1311-FB-728 and 25D01-1203-FB-185

**Vaidik, Chief Judge.**

# Case Summary

[1] Ronald Lambert pled guilty to Class B felony dealing in a schedule II controlled substance; the plea agreement provided that the trial court would determine the

sentence. The trial court sentenced Lambert to eighteen years, with fifteen years executed in the Indiana Department of Correction and three years suspended to probation. Lambert now appeals his sentence, arguing that the trial court abused its discretion in not identifying two mitigating factors and that his sentence is inappropriate under Indiana Appellate Rule 7(B). We affirm.

## Facts and Procedural History

In early March 2012, Deputy Travis Heishman of the Fulton County Sheriff's Department was contacted by concerned citizens who had observed "vehicular traffic and possible activity going on at the Lamberts' residence." Tr. p. 56. Following a controlled buy at the Lambert house by a confidential informant, a search warrant was issued. The search uncovered 125 firearms, 1400 pills that were classified as controlled substances, 3600 other miscellaneous pills, and $4000 in cash. Lambert was charged under Cause No. 25D01-1203-FB-185 ("FB-185") with Count I – Class B felony dealing in a controlled substance and Count II – Class D felony possession of a controlled substance. Lambert posted a $40,000 surety bond and was released.

Then, in the spring of 2013, the Sheriff's Department began receiving calls again about the Lambert house – "traffic going in and out, basically just consistent with what we had in 2012." *Id*. at 11. In November, several controlled buys were conducted at the Lambert residence, including one on November 13 in which a confidential informant was provided with a recording device and $100.00. The informant went to the Lambert residence and

purchased 5 IR-15s from Lambert.[1]  Appellant's App. p. 122.  Five days later a search warrant was obtained to search the Lambert residence.  The search uncovered, from Lambert's bedroom, several firearms, two twenty-dollar bills that were identified as buy money from a previous controlled buy, and prescription medications – including morphine sulphate extended release, a schedule II controlled substance, and 30 mg Oxycontin.  The pills were located inside of prescription bottles, some of which were missing their labels.

[4]  In November 2013, before his trial in FB-185, Lambert was charged under cause number 25D01-1311-FB-728 ("FB-728") with Count I - Class B felony dealing in a schedule II controlled substance and Count II – Class D felony possession of a schedule II controlled substance.  Lambert's bond in FB-185 was revoked, and Lambert was held without bail in FB-728.  Lambert and the State entered into a written plea agreement that covered the charges in both cases: Lambert pled guilty to Class B felony dealing in a schedule II controlled substance—Oxycodone—under FB-728, in exchange for which the State agreed to dismiss all remaining counts in both FB-185 and FB-728.  The plea agreement provided that the trial court would determine Lambert's sentence.

[5]  A sentencing hearing was held in December 2014.  At this hearing, the trial court accepted Lambert's guilty plea and entered judgment of conviction for Class B felony dealing in a schedule II controlled substance.  In sentencing

---

[1] An "IR-15" refers to a 15 mg pill of Oxycodone, a schedule II controlled substance.  The CI purchased five IR-15s with the $100.00.

Lambert, the trial court gave a lengthy explanation for its sentencing decision and discussed the aggravating and mitigating circumstances it identified in detail. The court identified the following aggravating circumstances: (1) the nature and circumstances of the offense, specifically the quantity of drugs recovered, the presence of firearms, and evidence that this was an organized business enterprise with far-reaching consequences; (2) Lambert's prior criminal history, including a felony conviction for burglary; and (3) Lambert was out on bond for the same offense when he committed this offense. Tr. p. 77-78. As to the third aggravator, the trial court remarked, "I don't think [there] can be any more blatant disregard of the law than to do something like that." *Id*. at 78. As mitigators, the trial court noted Lambert's age (seventy-four years old), health issues, and that he pled guilty, though the trial court found that to be "more of a pragmatic decision on his behalf." *Id*. at 77.

[6] Following the sentencing hearing, Lambert received a sentence of eighteen years, with fifteen years executed in the Department of Correction and three years suspended to probation.

[7] Lambert now appeals his sentence.

# Discussion and Decision

[8] On appeal, Lambert contends that the trial court abused its discretion in sentencing him and that his sentence is inappropriate in light of his character and the nature of his offense.

# I. Abuse of Discretion

[9] Lambert argues first that the trial court abused its discretion when it failed to consider as mitigating circumstances that Lambert was a good candidate for alternative forms of punishment and that he was unlikely to reoffend. Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*. For instance, an abuse of discretion has been found where the trial court: fails to enter a sentencing statement at all; enters a sentencing statement that explains the reasons for imposing a sentence—including a finding of aggravating and mitigating factors, if any—but the record does not support the reasons; enters a sentencing statement that omits reasons that are clearly supported by the record and advanced for consideration; or where the reasons given are improper as a matter of law. *Id*. at 490-91. An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Id*. at 493.

[10] On appeal, Lambert asserts that the trial court abused its discretion when it failed to identify as mitigators that he was unlikely to reoffend based on his low to moderate scores on the Indiana Risk Assessment System Tool and that he was a poor candidate for incarceration. The State argues that Lambert has

waived this argument by failing to proffer these mitigating circumstances to the trial court.

[11]    At the sentencing hearing, defense counsel stated the following:

> If we look at your own probation officer's statement, the substance abuse, peer associations, criminal attitude, behavior under the IRIS is low in those particular areas; and as far as criminal history, education, does not exceed moderate. . . . I have his daughter here today who is willing to allow him to stay at her location on in-home detention until such time as arrangements can be made to take him outside of his property where this is at. . . .  The question here today, Judge, is what is appropriate.  What is appropriate for a person who has lived the last forty-five years a law-abiding life up until this particular arrest, what is appropriate for a 74-year-old individual?

Tr. p. 75-76.  So Lambert did mention the IRIS results and he did inform the court that he could stay with his daughter on home-detention.  We find that Lambert did not waive these arguments.  Nonetheless, the trial court did not abuse its discretion by failing to consider them because Lambert has failed to show that these factors are both significant and clearly supported by the record. *See Anglemyer*, 868 N.E.2d at 493.  Indeed, given that Lambert was out on bond for possession and dealing in a controlled substance when he committed the very same offenses a year later, the record would not seem to support these arguments at all.  As articulated by the State,

> [Lambert]'s conduct clearly evinces that he is highly likely to reoffend if given the opportunity because he has a blatant disregard for the law. Alternative forms of punishment will not deter [Lambert] because he has previously committed the very same offenses repeatedly from inside his home.  There is only one way to ensure that [Lambert] does not resume dealing in illegal prescription pills again from any location and that is incarceration.

Appellee's Br. p. 14.  We find that the trial court did not abuse its discretion in not identifying these as mitigators.

# II. Inappropriate Sentence

[12]  Next Lambert contends that his eighteen-year sentence with fifteen years executed and three years suspended to probation is inappropriate in light of his character and the nature of his offense, and he asks us to revise it to a ten-year sentence with four years suspended to probation.  The Indiana Constitution authorizes independent appellate review and revision of a trial court's sentencing decision.  *Brown v. State*, 10 N.E.3d 1, 4 (Ind. 2014).  We implement this authority through Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find the sentence is inappropriate in light of the nature of the offense and the character of the offender.  *Id*.  Sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference.  *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008).  As such, in reviewing a sentence, this Court seeks to "leaven the outliers . . . but not to achieve a perceived 'correct' result in each case."  *Id*. at 1225.  Lambert bears the burden on appeal of showing us that his sentence is inappropriate.  *Brock v. State*, 983 N.E.2d 636, 642 (Ind. Ct. App. 2013), *reh'g denied*.

[13]  When Lambert committed this offense, the sentencing range for a Class B felony was between six and twenty years, with an advisory sentence of ten

years.  Ind. Code Ann. § 35-50-2-5(a) (West 2012).  Thus, Lambert was ordered to serve five years executed above the advisory sentence.

[14]  Concerning the nature of the offense, Lambert possessed and sold large quantities of prescription drugs as an ongoing business enterprise.

[15]  Concerning the character of the offender, Lambert in FB-728 committed the same offense for which he was out on bond in FB-185.  As argued by the State at the sentencing hearing, "Even though he had major felony cases pending against him for that exact same thing, he goes right back in business and commits the same offenses and dumps the same poison into the community.  So that, to me, is his character."  Tr. p. 73.  Although he pled guilty, the trial court found that to be "more of a pragmatic decision on his behalf" than a true recognition of culpability.  *Id*. at 77.  Indeed, at his initial hearing in FB-728, Lambert stated, "I'd swear on my momma's grave that it wasn't nothing there in my house."  *Id*. at 3.  In the presentence investigation report, Lambert's version of the offense was as follows:  "People came to me ill & claim that there [sic] medication was not working well for them.  I was asked if I could be of help & I offered & gave them some of my medication to assist them with their pain."  Appellant's App. p. 150.  Thus, he still seems unwilling to accept responsibility for his behavior and the damage he has likely caused through his criminal activity.  The trial court also noted Lambert's prior criminal history, including a 1959 burglary conviction and 1962 parole violation:  "The convictions are many years ago but still reflect on his character."  *Id*. at 66.

In light of the nature of the offense and his character, Lambert has failed to persuade us that his eighteen-year sentence, with fifteen years executed and three years suspended to probation, is inappropriate.

Affirmed.

Kirsch, J., and Bradford, J., concur.